DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Marvin Lamont Williams, appeals from the judgment of the Summit County Court of Common Pleas sentencing him on three felony counts and four misdemeanor counts. We dismiss the appeal in part for lack of a final appealable order and affirm the judgment of the trial court in part.
 I. {¶ 2} At about 12:39 a.m. on September 1, 2005, while on patrol in their cruiser, Officers Justin Ingham and Joseph Bodnar of the Akron Police Department observed a Plymouth Acclaim traveling westbound on Delia Avenue in Akron. On the afternoon of August 30, 2005, the owner of the Acclaim, Linda Gatlin, had reported the vehicle as being stolen, and the officers noticed that the car was included on a list that they had received at the beginning of their shift, identifying vehicles that had been reported as stolen. The officers began to follow the vehicle, which sped up rapidly and ran a stop sign. The officers turned on the overhead lights and sirens on their cruisers and began to pursue the Acclaim through a residential area as it turned a number of corners, running 18 stop signs and two red lights and reaching speeds of 60 to 70 m.p.h. in 25 m.p.h. zones. Officer Bodnar testified that people were standing on the sidewalks and near the sides of the streets and that cars were parked along the side of the street, while other officers testified that they did not see any people or traffic. When the vehicle came to a stop, four or five minutes after the chase began, Officer Bodnar and Officer Christopher Hutchinson, who had been called as a back-up, approached the driver's side of the vehicle and ordered Appellant to get out of the car. Appellant did not get out, and the officers pulled Appellant from the vehicle, made him lie prone on the ground, and handcuffed him. Appellant received a cut near his eye in the process. An ambulance was summoned and Appellant was examined and treated at the scene. In a tape recorded interview with a police sergeant at the scene, Appellant admitted that he did not have a driver's license. Appellant was indicted on September 9, 2005, on charges of receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); failure to comply with the order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B); no operator's license, a misdemeanor of the first degree, in violation of R.C. 4507.02; failure to stop at a stop sign, a minor misdemeanor, in violation of R.C.4511.12; and failure to stop at a red light, a minor misdemeanor, in violation of R.C. 4511.13.
 {¶ 3} On November 27, 2005, just after 11:30 p.m., while Appellant was awaiting trial on the charges contained in the September 9 indictment, Officer Timothy Van Nostran and his partner, Officer Patrick Didyk, of the Akron Police Department, observed Appellant leaving a house on Copley Road, driving a blue Oldsmobile. The house had been the site of several previous drug busts, primarily involving crack cocaine. The Oldsmobile accelerated to a speed of approximately 60 m.p.h. in a 35 m.p.h. zone, and the officers pursued the vehicle with their overhead lights and sirens engaged. The Oldsmobile did not stop, but the driver opened his door while the vehicle was in motion, then closed the door and turned onto a series of residential side streets. The vehicle reached speeds between 50 and 70 m.p.h., running several stop signs and coming within inches of cars parked on some of the side streets. Officer Van Nostran pulled his cruiser alongside the Oldsmobile. Appellant attempted to turn the Oldsmobile down another street, lost control, and struck the midsection of Officer Van Nostran's cruiser.
 {¶ 4} Officer Van Nostran and Officer Hutchinson, who had again been called as a back-up, approached the driver's side of the Oldsmobile, while Officer Didyk secured the front-seat passenger in the Oldsmobile, Tracy Johnson. When the driver's door was opened, Officer Van Nostran and Officer Hutchinson commanded Appellant to show his hands and attempted to grab Appellant by the arm to pull him from the vehicle. Appellant repeatedly pulled away from the officers and retreated within the vehicle and did not comply with the request to show his hands. During the struggle, Officer Hutchinson broke his finger when he caught it in Appellant's clothing. To bring Appellant under control, Officer Van Nostran pulled out his baton and struck Appellant in the upper chest area. Appellant was eventually pulled from the car and made to lie face-down on the ground, but he continued to struggle, tucking his arms underneath his torso and continuing to ignore requests to show his hands. Officer Van Nostran struck Appellant in the lower leg with his baton and Officer Didyk also struck Appellant twice in the back with his fist. Finally, Officer Didyk stunned Appellant with his tazer, allowing the officers to gain control of Appellant's arms and handcuff him. An ambulance was summoned and Appellant, who was bleeding from the struggle, was taken to a hospital.
 {¶ 5} Officer Van Nostran and Officer Didyk conducted an inventory search of the vehicle, which was not registered to Appellant but was not reported as stolen. The officers discovered what they believed to be a marijuana "blunt"-a hollowed-out cigar containing marijuana — on the passenger side floorboard and what appeared to be crumbs of crack cocaine on the driver side floorboard. A laboratory test confirmed that the crumbs contained cocaine. Another blunt was found on the ground near the driver's door, and $270 in cash was found in Appellant's sock. Officer Van Nostran then accompanied Appellant to the hospital, where Appellant was examined and treated. At the hospital, Appellant was advised of his Miranda rights. Officer Van Nostran testified that Appellant admitted to purchasing crack cocaine for Tracy Johnson; that Appellant admitted to having the crack in his hand during the car chase but didn't know where it went after he was removed from the car; that Appellant admitted to smoking marijuana that evening; and that Appellant stated he had attempted to escape because he did not have a driver's license. Officer Didyk and Officer Van Nostran testified that as they escorted Appellant out of the hospital later that night, Appellant dropped a small plastic baggie on the ground. Officer Didyk recovered the baggie, which contained objects resembling rocks of crack cocaine, and a subsequent lab test confirmed the presence of cocaine. A hospital security officer, who had watched surveillance camera footage from the time that Appellant was taken from the hospital, testified that he did not see Appellant drop anything or see the police officers stop to pick anything up from the floor.
 {¶ 6} Appellant was indicted on a supplemental indictment on charges of failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B); possession of cocaine in the amount of one to five grams, a felony of the fourth degree, in violation of R.C. 2925.11(A); illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1); possession of marijuana, a minor misdemeanor, in violation of R.C. 2925.11(A); driving under suspension, a misdemeanor of the first degree, in violation of R.C. 4510.11; resisting arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A); obstructing official business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A); and reckless operation, a minor misdemeanor, in violation of R.C. 4511.20. The cocaine charge was later amended to possession of cocaine in an amount less than one gram, a felony of the fifth degree, in violation of R.C. 2925.11(A).
 {¶ 7} A jury trial was held, with the minor misdemeanor charges tried to the court and all other charges tried to the jury. The charges of driving under suspension and receiving stolen property were dismissed pursuant to Appellant's Crim.R. 29 motion, and no sentence was imposed on the minor misdemeanor counts. Appellant was found guilty on all remaining charges. He was sentenced to an aggregate of nine years and nine months in prison. Appellant timely appeals, raising four assignments of error.
 II. A. First Assignment of Error "THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF SIMILAR ACTS INTO EVIDENCE[.]"
 {¶ 8} At trial, Appellee presented testimony from police officers who had engaged in two previous high-speed car chases with Appellant. One of these chases occurred in April 2004, when Appellant left a known drug house, spotted police officers observing the house, and drove away at a high rate of speed, making a fast turn without using his turn signal. On that occasion, Appellant drove at a rate of about 60 to 75 m.p.h. down narrow residential streets and through three or four stop signs before jumping a curb, driving through front yards, and flipping the car on a pile of rocks. Appellant told officers that he fled because his driver's license was suspended. No drugs were found in the car.
 {¶ 9} The other prior chase occurred one month later, in May 2004, when officers spotted Appellant driving recklessly. Officers pulled Appellant over and got out of their cruiser, at which point Appellant drove away at a high rate of speed. During the ensuing two-minute chase, Appellant threw a folded dollar bill containing cocaine out the window of the vehicle before coming to a stop. The chase reached speeds of 50 to 55 m.p.h. in a 25 m.p.h. zone.
 {¶ 10} An appellate court will not overturn the decision of a trial court as to the admission or exclusion of evidence absent a clear abuse of discretion that has materially prejudiced the defendant. State v.Maurer (1984), 15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 11} Evid.R. 404(B) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 12} Appellant argues that the trial court abused its discretion in admitting this evidence. Appellant notes that there is no issue as to his identity and argues that the prior acts were unrelated to the offenses at issue in the present case. Appellee, on the other hand, contends that the evidence of the 2004 chases was relevant to show Appellant's intent in the present case.
 {¶ 13} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The Third District Court of Appeals has held that evidence of a prior high speed pursuit can be relevant to show a motive to flee from an officer. State v. Kaser (Oct. 15, 1998), 3d Dist. No. 5-98-11, at *5. Furthermore, this Court has held that evidence of a defendant's prior arrests for possession of methamphetamines and lab equipment was relevant to show intent where the defendant was later charged with the same crimes. State v. Kolvek, 9th Dist. No. 21752, 2004-Ohio-3706, at ¶ 23, 25.
 {¶ 14} In the present case, the trial court gave limiting instructions both when the testimony was offered as to the two prior chases and during the regular jury instructions before deliberation. The jury was instructed to consider the testimony only as evidence of absence of mistake, motive, purpose, or plan, not as evidence of conduct in conformity with the charges in the present case. Given that crack cocaine and marijuana were found in Appellant's car after the November 27, 2005 car chase and that at least one of Appellant's prior car chases involved an apparent attempt to avoid being caught with cocaine, evidence of the prior incidents could tend to show that Appellant had a motive — and therefore the intent — to flee police officers on at least one of the occasions at issue. See Kaser, at *5. We cannot conclude, therefore, that the trial court abused its discretion in admitting the evidence of the prior car chases.
 {¶ 15} In any case, even if it had been erroneous for the trial court to admit the evidence of other crimes, any error would have been harmless. "[W]here there is sufficient independent evidence of a defendant's guilt, thereby rendering improperly admitted statements harmless beyond a reasonable doubt, the error in admitting them is not prejudicial and reversal is unwarranted." Id. at *6, citing State v.Smith (1996), 115 Ohio App.3d 419, 424. Such a situation occurs where the properly admitted evidence of guilt is overwhelming and the prejudice is minimal by comparison. State v. Moritz (1980),63 Ohio St.2d 150, 156. In the present case, testimony from officers involved in both of the 2005 pursuits strongly indicates that Appellant willfully fled from the police officers on both occasions. Appellant reached speeds of approximately 60 m.p.h. during one chase and 70 m.p.h. during the other, on narrow residential side streets, running multiple stop signs on both occasions — including 18 stop signs and two red lights on September 1, 2005 — for approximately four minutes on each occasion, while multiple police cars followed him just a few carlengths behind with their lights and sirens engaged. According to Police Sgt. Dale Dorn, Appellant stated on September 1, 2005 that he did not want to be caught in a stolen car. Even without the evidence of past acts, the full extent of the testimony — much of which is essentially undisputed — so strongly indicates that Appellant willfully fled from the officers that any additional evidence regarding the prior police pursuits would not have been prejudicial. Appellant's first assignment of error is overruled.
 B. Second Assignment of Error "THE STATE WITHHELD EVIDENCE FROM THE DEFENSE UNTIL THE DAY OF TRIAL CAUSING UNFAIR SURPRISE AND DENIED APPELLANT THE OPPORTUNITY TO CHALLENGE THE ADMISSIBILITY OF THE EVIDENCE TO HIS DETRIMENT[.]"
 {¶ 16} Appellant next contends that he was prejudiced because the prosecution did not provide Appellant with a copy of an officer's Report of Investigation ("ROI") containing his statements to officers until the day of trial and completely failed to provide Appellant with a "Use of Force Report" compiled by police at the time of the arrest, all despite Appellant's discovery requests. Consequently, Appellant claims, he was unable to cross-examine witnesses effectively and had no opportunity to file a motion to suppress the statements made by Appellant, who allegedly was not advised of his Miranda rights.
 {¶ 17} Pursuant to the local rules of the Summit County Court of Common Pleas, an open file discovery procedure was conducted in this case. Loc.R. 21.06. In an open file discovery, the defense has access to all of the prosecution's files, allowing for a much broader discovery than that provided for by Crim.R. 16 and obviating the need for formal discovery requests under that rule. State v. Ross, 9th Dist. Nos. 22447, 22598, 2005-Ohio-5189, at ¶ 34. Appellant claims that the police reports which would have provided the information he needed were not in Appellee's file and that Appellee did not provide him with these items when he filed a formal Crim.R. 16 discovery request.
 {¶ 18} A prosecutor's failure to provide discovery only amounts to reversible error if "'(1) the prosecution's failure to disclose was a willful violation of [Crim.R. 16], (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect.'" State v.Williams, 9th Dist. No. 21840, 2004-Ohio-4316, at ¶ 8, quoting State v.Joseph (1995), 73 Ohio St.3d 450, 458.
 {¶ 19} Appellant bears the burden of demonstrating the trial court's error by reference to matters in the record. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199. We do not believe that Appellant has met this burden. During a recess at trial, the parties conferred with the trial judge. Appellant claimed that he had not been given access to the Use of Force Report and that he had not been permitted to copy the ROI, and therefore could not properly cross-examine the officer who compiled it. Appellee denied receiving the Use of Force Report from the police department and stated that the ROI, which contained Appellant's statements, had been in the file from the start of the case and that Appellant had an opportunity to copy it during the discovery process. Nothing in the record supports Appellant's present claim that he lacked access to anything in Appellee's files, much less that Appellee willfully withheld information from Appellant. Furthermore, because neither the ROI nor the Use of Force Report appears in the record before this Court, we are unable to determine what prejudice, if any, may have occurred from any failure to provide these items to Appellant. Finally, it does not appear from the record that Appellant sought a continuance from the trial court when he discovered that he had not received the requested discovery prior to the day of trial. Had Appellant done so, any prejudice that may have resulted from the delay in receiving the documents would have been cured. Appellant's second assignment of error is therefore overruled.
 C. Third Assignment of Error "APPELLANT'S CONVICTIONS WERE BASED UPON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION."
 {¶ 20} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 21} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 22} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 23} Sufficiency of the evidence is required to take a case to the jury; therefore, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. We will address Appellant's arguments as they relate to each individual offense.
1. Possession of marijuana/reckless operation
 {¶ 24} Appellant claims that the evidence is insufficient to support a conviction on the charges of possession of marijuana and reckless operation. Although the trial court found Appellant guilty on these charges, the court specifically declined to impose a fine on the basis of Appellant's indigency. "A conviction without the imposition of a sentence is not a final appealable order," and this court does not have jurisdiction to review such a conviction. State v. Bennett (April 24, 2002), 9th Dist. No. 01CA0040, at *1. However, where a defendant has been found guilty of multiple charges and the court imposes sentences on some charges but declines to impose a sentence as to other charges, the order remains appealable as to those convictions on which sentencing was imposed. See id.; State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, at ¶ 6, 9, 10 (rejecting the "package" rationale of sentencing and holding that a reviewing court must consider each offense separately on review). Therefore, although we do not have jurisdiction to address any claims of error as to the charges of reckless operation and possession of marijuana, we will proceed to address Appellant's claims as to the charges on which he was sentenced.
2. Possession of cocaine
 {¶ 25} Appellant argues that the jury clearly lost its way in finding him guilty of possession of cocaine. Appellant notes that no drugs were found on his person during any searches incident to the November 27, 2005 arrest and that police officers testified to searching Appellant and finding no drugs before Appellant, who was handcuffed, dropped a bag of crack cocaine on the ground while leaving the hospital. Furthermore, Appellant notes that a hospital security guard who watched a surveillance video of Appellant and the officers leaving the hospital did not see anybody stop or bend over as if to pick up the bag of crack.
 {¶ 26} An officer testified, however, that while at the hospital, Appellant admitted that he had purchased crack that evening for his passenger, Tracy Johnson. According to the officer, Appellant stated that he had the crack in his hand while he was driving and when he was removed from the car but did not know what happened to it after he was removed from the car. In addition, while two of the officers who testified differed in their accounts as to how thoroughly Appellant was searched before he was taken to the hospital or while he was at the hospital, both officers said it would have been possible for them to miss the baggie during the searches if it had been hidden well enough. Finally, there was testimony to indicate that the security camera, mounted on a building eleven floors above the parking lot, provided only a poor quality black and white image from which it might have been difficult to tell whether individuals in the parking lot were stopping or bending over. The jury did not lose its way in finding Appellant guilty of possession of cocaine, and the evidence was sufficient to support a finding that Appellant had possessed cocaine.
3. Possession of drug paraphernalia
 {¶ 27} Appellant was charged with possession of drug paraphernalia on the basis of the hollowed cigars, or blunts, found in and near the car, both of which contained marijuana. Appellant argues that the hollowed cigars are not "drug paraphernalia" as defined in R.C. 2925.14. R.C.2925.14(A)(13) defines drug paraphernalia to include "[a]n object, instrument, or device for ingesting, inhaling, or otherwise introducing into the human body, marihuana * * *." Appellant notes that R.C.2925.14(A)(13) contains a list of numerous devices that may be used to smoke marijuana but that the list makes no reference to rolling papers or cigar wraps. R.C. 2925.14(A), however, specifically states that "'[d]rug paraphernalia' includes, but is not limited to" the items listed in R.C. 2925.14(A)(1)-(13). (Emphasis added.). See, also, R.C.2925.14(A)(13). In determining whether an item is drug paraphernalia, the court must consider numerous factors, including the physical proximity of the item to a controlled substance. R.C. 2925.14(B)(3). This Court has previously held that rolling papers could be drug paraphernalia where they were found in a vehicle along with three bags of marijuana, even though R.C. 2925.14(A)(13) does not specifically include rolling papers in the list of items that may constitute drug paraphernalia. State v. Reid (Nov. 19, 1997), 9th Dist. No. 18364, at *4. Likewise, we find that the term drug paraphernalia may include a cigar wrap used as a blunt for the purpose of inhaling marijuana, particularly where the cigar wrap contains marijuana. The jury did not clearly lose its way in finding that the marijuana blunt was drug paraphernalia, and the evidence was sufficient to support that finding.
4. Obstructing official business/resisting arrest
 {¶ 28} Under R.C. 2921.33(A), a person is guilty of resisting arrest if he interferes with a lawful arrest recklessly or by force. Furthermore, R.C. 2921.31(A) provides that a person is guilty of obstructing official business if he purposely "hampers or impedes a public official in the performance of the public official's lawful duties." Appellant contends that several witnesses observed the police immediately pulling Appellant from the vehicle following the November 27, 2005 car chase and that there was not enough time for Appellant to impede the officers' lawful duties or to resist arrest by force. To the contrary, there was testimony from several officers that Appellant pulled away from officers as they reached inside the car to extract him from the vehicle. Appellant's actions were forceful enough that one officer's finger was broken during the struggle. Officers also testified that Appellant refused to show his hands when ordered to do so and that when the officers were finally able to bring Appellant to the ground, Appellant tucked his hands under his torso to avoid being handcuffed. The jury did not lose its way in finding that Appellant forcefully resisted arrest and purposely hampered the officers in performing their public duties, and the evidence was sufficient to support those findings.
5. No operator's license
 {¶ 29} Appellant claims that no evidence was presented to support a finding that he did not have a valid driver's license. However, the trial court admitted into evidence a transcript of Appellant's record from the Bureau of Motor Vehicles showing that Appellant did not have a valid driver's license. Appellant also admitted that he did not have a valid driver's license when he was stopped on September 1, 2005. The jury did not lose its way in finding Appellant guilty of operating a motor vehicle with no operator's license, and the evidence was sufficient to support such a finding.
6. Failure to comply
 {¶ 30} A person is guilty of failure to comply if he "operate[s] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). Failure to comply is a felony of the third degree if "the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii). A "[substantial risk" is defined as "a strong possibility * * * that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).
 {¶ 31} Appellant contends that both car chases occurred late at night, that no traffic or pedestrians were seen in the vicinity, and that both chases lasted only a few minutes. Consequently, Appellant argues, there was insufficient evidence for the jury to find that Appellant risked causing substantial harm to persons or property, and the jury clearly lost its way in making those findings. In any case, Officer Bodnar testified that he saw a few people on the sidewalks during the September 1, 2005 car chase and that cars were parked along the side of the streets. "[T]he failure of Appellant to engage in a `near collision' speaks to nothing more than Appellant's good luck * * *; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that Appellant's reckless driving created." State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 19. Testimony further indicates that Appellant sped through 18 stop signs and two stoplights, down narrow residential streets, at speeds more than twice the legal speed limit, forcing three police officers in two cars to chase him. Even if it made a difference that no other motorists happened to be in the intersections when Appellant ran the stop signs, a jury could reasonably have found that Appellant's conduct at the very least posed a risk of serious physical harm to the cars parked along the side of the streets, to the few bystanders on the sidewalks, and to the police officers chasing Appellant.
 {¶ 32} The facts surrounding the second car chase form an even more compelling case against Appellant. Again, this high speed car chase involved multiple police cruisers and took Appellant through residential areas, where he came within inches of hitting cars parked along the side of the narrow streets. Furthermore, Appellant had a passenger in the car during this chase, and the chase ended when Appellant collided with a police cruiser because he was traveling too quickly to execute a turn. The jury could reasonably have found that Appellant's conduct in both cases posed a substantial risk of serious physical harm to his passenger, the parked cars, the police officers chasing him, and the police cruiser. To the extent that Appellant's third assignment of error addresses charges on which he was not sentenced, we dismiss the appeal for lack of jurisdiction. As to all other charges, Appellant's third assignment of error is overruled.
 D. Fourth Assignment of Error "THE TRIAL COURT ERRED BY FAILING TO CONSIDER AND WEIGH THE FACTORS REQUIRED UNDER R.C. 2929.331, [sic] 2929.12, AND 2929.13 WHEN SENTENCING APPELLANT ON TWO COUNTS OF FAILURE TO COMPLY[.]"
 {¶ 33} Appellant finally argues that the trial court failed to consider the general sentencing factors provided for in R.C. 2929.12 and R.C. 2929.13, plus the sentencing factors specific to the charge of failure to comply, provided for in R.C. 2921.331(C)(5)(b). Nothing in the record, however, indicates that the trial judge failed to consider these factors when sentencing Appellant. The trial court need not state specific findings as to the sentencing factors on the record. State v.Anderson, 8th Dist. No. 83285, 2004-Ohio-2858, at ¶ 21. In any case, during the sentencing hearing, the trial court did specifically address several of these factors. Among the factors to be considered under R.C.2921.331(C)(5)(b) are:
 "(i) The duration of the pursuit;
 "(ii) The distance of the pursuit;
 "(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
 "(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
 "(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
 "* * *
 "(vii) Whether the offender committed a moving violation during the pursuit;
 "(viii) The number of moving violations the offender committed during the pursuit;
 "(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense."
 {¶ 34} The trial judge referenced these factors during the sentencing hearing. Specifically, she stated that Appellant ran two red lights and eighteen stop signs, drove at speeds in excess of 60 to 70 m.p.h., and risked damage to property and injury to other persons. Testimony was presented at trial to support all of these findings. The fourth assignment of error is overruled.
 III. {¶ 35} The appeal is dismissed for lack of a final appealable order as to the charges of possession of marijuana and reckless operation, on which Appellant was not sentenced. In all other respects, Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed in part, and appeal dismissed in part.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. CONCURS