**The STATE of Ohio, Appellee,**

v.

**DEROV, Appellant.**

[Cite as *State v. Derov,* 176 Ohio App.3d 43, 2008-Ohio-1672.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 71.

Decided March 28, 2008.

44

Paul J. Gains, Mahoning County Prosecuting Attorney, and Jennifer Paris, Assistant Prosecuting Attorney, for appellee.

Robert C. Kokor, for appellant.

---

DeGenaro, Presiding Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and oral arguments to this court. Appellant, Jessica Derov, appeals the decision of Mahoning County Court Number 4 denying her motion to suppress and finding her guilty of one count of driving under the influence in violation of R.C. 4511.19(A)(1)(a), one count of per se driving with a prohibited blood-alcohol level in excess of 0.08 in violation of R.C. 4511.19(A)(1)(d), one count of use of unauthorized plates in violation of R.C. 4549.08, and one count of an expired registration in violation of R.C. 4503.11.

{¶ 2} Derov challenges the trial court's denial of her motion to suppress the results of field sobriety tests, the results of the breath-alcohol-content test ("BAC"), and her admission to consuming alcohol. Because the results of the field sobriety tests should have been suppressed and because there is not enough other evidence to support a finding of probable cause to arrest, we reverse the judgment of the trial court, we vacate Derov's conviction, and we remand this matter to the trial court for further proceedings.

{¶ 3} On August 12, 2006, at 2:30 A.M., Officer Martin of the Ohio State Highway Patrol initiated a stop of Derov's car based upon the expired tags on her license plate. Prior to the stop, the officer had witnessed no erratic driving. During the stop, however, the officer noticed a strong smell of alcohol emanating from Derov's vehicle. The officer had Derov exit the vehicle. He then determined that the smell of alcohol was coming from Derov. He also noticed that she had red, glassy eyes. The officer admitted that Derov had no difficulty exiting her car and demonstrated no physical signs of alcohol consumption.

{¶ 4} The officer then had Derov perform field sobriety tests including the walk and turn, the horizontal-gaze nystagmus, the one-leg stand, and a portable breath test. The officer testified that Derov failed all but one of these tests, the one-leg stand. After completing the tests, the officer asked Derov whether she had consumed any alcohol, to which she responded that she had consumed one beer. Derov was placed under arrest and taken to the control post where she was given a breath test that indicated her blood-alcohol content to be 0.134. After filing a motion to suppress that was denied by the trial court, Derov was convicted of one count of driving under the influence, in violation of R.C. 4511.19(A)(1)(a), and one count of driving with a prohibited blood-alcohol level in excess of 0.08, in violation of R.C. 4511.19(A)(1)(d).

{¶ 5} In her first of three assignments of error, Derov argues:

{¶ 6} "The trial court committed reversible error by overruling the motion to suppress three of the field sobriety tests performed by the Defendant/Appellant."

{¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting these facts as true, the appellate court conducts a de novo review of whether the facts satisfy the applicable legal standards at issue in the appeal. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

{¶ 8} The Ohio Supreme Court has recognized that since the amendment of R.C. 4511.19 by the Ohio Legislature in 2003, field sobriety tests are no longer required to be conducted in strict compliance with standardized testing procedures. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 9. "Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." Id. This holding further enforces R.C. 4511.19(D)(4)(b), which provides that evidence and testimony of the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."

{¶ 9} In determining whether the state has shown by clear and convincing evidence that the officer administered the tests in substantial compliance with testing standards, the allocation of burden of proof for a motion to suppress must be determined. In order to suppress evidence or testimony concerning a warrantless search, a defendant must "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph one of the syllabus. The defendant is required to set forth the basis for the challenge "only with sufficient particularity to put the prosecution on notice of the nature of the challenge." *State v. Purdy,* 6th Dist. No. H–04–008, 2004-Ohio-7069, 2004 WL 2983663, at ¶ 15, citing *State v. Shindler* (1994), 70 Ohio St.3d 54, 57–58, 636 N.E.2d 319. After the defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. Id., citing *State v. Johnson* (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249.

{¶ 10} As part of the state's proof that the officer had probable cause to arrest Derov, the state introduced the result of a portable breath test that Derov took prior to the arrest. Derov challenged the admission of the portable breath test results as evidence at the suppression hearing. Several courts have determined that the results of a portable breath test are not admissible, even for probable-cause purposes. See *State v. Ferguson* (Apr. 18, 2002), 3d Dist. No. 4–01–34, 2002 WL 596115; *Cleveland v. Sanders,* 8th Dist. No. 83073, 2004-Ohio-4473, 2004 WL 1902228; *State v. Delarosa,* 11th Dist. No. 2003–P–0129, 2005-Ohio-3399, 2005 WL 1538264; *State v. Mason* (Nov. 27, 2000) 12 Dist. No. CA99–11–033, 2000 WL 1741621. Even the Fourth District, which has concluded that portable breath tests are admissible for purposes of a probable-cause determination, admits that these tests are highly unreliable.

{¶ 11} "[Portable breath test] devices are not among those instruments listed in Ohio Adm.Code 3701–53–02 as approved evidential breath-testing instruments for determining the concentration of alcohol in the breath of individuals potentially in violation of R.C. 4511.19. PBT results are considered inherently unreliable because they 'may register an inaccurate percentage of alcohol present in the breath, and may also be inaccurate as to the presence or absence of any alcohol at all.' See *State v. Zell* (Iowa App.1992), 491 N.W.2d 196, 197. [Portable breath test] devices are designed to measure the amount of certain chemicals in the subject's breath. The chemicals measured are found in consumable alcohol, but are also present in industrial chemicals and certain nonintoxicating over-the-counter medications. They may also appear when the subject suffers from illnesses such as diabetes, acid reflux disease, or certain cancers. Even gasoline containing ethyl alcohol on a driver's clothes or hands may alter the result. Such

48

factors can cause [portable breath tests] to register inaccurate readings, such as false positives. See Tebo, New Test for DUI Defense: Advances in Technology and Stricter Laws Create Challenges for Lawyers, Jan. 28, 2005, www.duicentral. com/aba_journal/." *State v. Shuler*, 168 Ohio App.3d 183, 2006-Ohio-4336, 858 N.E.2d 1254, ¶ 10.

{¶ 12} Given the inherent unreliability of these kinds of tests, we agree with the majority of our sister districts and conclude that the trial court should not have considered the results of the portable breath test.

{¶ 13} Derov next challenges the trial court's failure to suppress the results of the Horizontal Gaze Nystagmus ("HGN") test. More specifically, Derov claims that the officer did not spend the required amount of time on each portion of the test and thus did not substantially comply with the guidelines.

{¶ 14} After giving the appropriate instructions to a test subject, the National Highway Traffic Safety Administration ("NHTSA") guidelines instruct the examiner to conduct the actual test in three phases. First, the examiner is instructed to have the subject focus on a stimulus while the examiner moves the stimulus from left to right. While moving the stimulus, the examiner checks for smooth pursuit of the test subject's eyes. The examiner then tracks each eye again, checking for horizontal nystagmus at maximum deviation. Finally, the examiner tracks each eye from left to right while looking for the onset of nystagmus before the eye has tracked 45 degrees.

{¶ 15} The NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the three phases of the exam. For instance, when checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for the onset of nystagmus prior to 45 degrees, the time for tracking left to right should also be approximately four seconds.

{¶ 16} The guidelines do not state a total minimum amount of time required for properly conducting all three phases of the exam. However, those minimums in the guidelines can be added up and total 68 seconds, which agrees with Officer Martin's testimony at the suppression hearing. Courts have found that falling significantly short of the time limits would render the results of the test inadmissible to demonstrate probable cause to arrest.

{¶ 17} For example, in *State v. Embry*, 12th Dist. No. CA2003–11–110, 2004-Ohio-6324, 2004 WL 2698417, during the cross-examination of the arresting officer, the defendant added up all the approximate and minimum times called for in the guidelines. He then compared that total time to the total time that elapsed

on the video that recorded the performance of the HGN test. A comparison of the two total times revealed that the total time the officer used to conduct the HGN test on the defendant fell significantly short of the total of all the time requirements listed in the guidelines. Therefore, the Twelfth District concluded that the officer did not substantially comply with the guidelines and upheld the trial court's decision to exclude the test from evidence.

{¶ 18} Likewise, in *State v. Mai*, 2d Dist. No. 2005–CA–115, 2006-Ohio-1430, 2006 WL 759706, the officer testified that he conducted the three phases of the HGN test much faster than the four-second minimums set forth in the NHTSA. For example, the officer testified that with respect to the maximum-deviation component of the test, he held the stimulus to the side for a period of only one to two seconds, while the NHTSA manual required a minimum of at least four seconds. In light of these deficiencies in the administration of the HGN test, the Second District found a lack of substantial compliance with the NHTSA guidelines.

{¶ 19} Here, it was established at the suppression hearing that Officer Martin only took 44 seconds to perform the HGN test. This is a significant deviation from the minimum time specified in the guidelines, which makes this case analogous to both *Embry* and *Mai*. We agree with those courts that such a significant difference calls the reliability of the results into question. Accordingly, the state had failed to show substantial compliance by clear and convincing evidence, and the results of the HGN test should have been suppressed by the trial court.

{¶ 20} Finally, Derov challenges the trial court's failure to suppress the results of the "walk and turn" test. The NHTSA manual requires that the officer give instructions regarding "initial positioning" of the suspect prior to the suspect taking the test. The officer should instruct the suspect to place their left foot on the line and then place their right foot on the line ahead of the left foot. The heel of the right foot should be against the toe of the left foot. The officer should then instruct the suspect to keep their arms down at their sides and maintain that position until the officer has completed the instructions for the walk-and-turn test.

{¶ 21} The officer is then to instruct the suspect, once he tells the suspect to begin, to take nine heel-to-toe steps, turn and take nine heel-to-toe steps back. When they turn, they should keep the front foot on the line and turn by making a series of small steps with the other foot. He should further instruct the suspect to keep their arms at their sides while walking and watch their feet at all times. Once they start walking, they should not stop until they have completed the test.

{¶ 22} In this case, the officer stated that Derov failed three of the eight factors used to determine whether a person has failed the walk-and-turn test: (1)

she moved her feet to maintain her balance during the instruction phase of the test, (2) she raised her arms during the demonstration phase of the test, and (3) she failed to place her feet heel-to-toe during the demonstration phase of the test.

{¶ 23} Derov claims that the officer improperly considered the fact that she raised her arms while she performed her test, and she is correct. During his testimony, the officer stated that he did tell her during the instruction stage that she should keep her arms down. However, he did not tell her to keep her arms down for the walking or demonstration stage of the test. Despite the officer's failure to instruct Derov to keep her arms down, he scored the raising of her arms during the test as a clue against her when determining that she failed the test. This was improper. It is fundamentally unfair to hold a person's failure to complete a test properly against them if the person has not been properly instructed on how to complete the test.

{¶ 24} Derov also contends that the officer improperly counted the fact that she moved her feet during the instruction phase since he did not testify that her feet actually broke apart. The guidelines state that a factor an officer should consider is if a suspect moves her feet to keep her balance while listening to the instructions. However, the guidelines specifically state that this factor only counts against a suspect if the suspect's feet actually break apart. In this case, the officer never testified that Derov's feet actually broke apart. Instead, he only testified that she moved her feet to keep her balance during the instruction phase. Thus, it is, at the very least, questionable whether this factor should have been counted against Derov.

{¶ 25} Given the fact that the state has only clearly and convincingly proved that Derov failed one clue out of eight on one field sobriety test, and in the absence of other evidence, we cannot say the officer had probable cause to arrest Derov. Moreover, it is unclear whether the officer should have even administered field sobriety tests in this case.

{¶ 26} In the past, courts have held that an officer does not have the right to have a suspect submit to field sobriety tests if the only evidence of impairment is that it is early in the morning, that the suspect had glassy, bloodshot eyes, that he had an odor of alcohol about his person, and that he admitted that he had consumed one or two beers. See State v. Dixon (Dec. 1, 2000), 2d Dist. No. 2000–CA–30, 2000 WL 1760664; see also State v. Downen (Jan. 12, 2000), 7th Dist. No. 97–BA–53, 2000 WL 126616 (Even a "pervasive" or "strong" odor of alcohol "is no more a probable indication of intoxication than eating a meal is of gluttony"). This is because it is still legal to drink and drive in Ohio; it is only illegal to drive while impaired or while over the legal limit.

{¶ 27} In this case, most of the evidence the officer could rely on when deciding whether to arrest Derov was similar to that discussed in Dixon, i.e., the time of the stop, the smell of alcohol, the red glassy eyes, Derov's admission to drinking one beer. Derov had not been driving erratically, the officer did not testify at the suppression hearing that Derov was slurring her speech, and the officer admitted that Derov had no problem walking to his car. Indeed, the only possible indication of any physical impairment was Derov's highly questionable failure of the walk-and-turn test. These facts are simply insufficient to establish probable cause to believe that a particular person was driving under the influence of alcohol. Accordingly, Officer Martin did not have probable cause to arrest Derov, and any evidence obtained after her arrest should have been suppressed. Derov's first assignment of error is meritorious.

{¶ 28} In her other two assignments of error, Derov argues:

{¶ 29} "The trial court committed reversible error by overruling the Motion to Suppress the breath-alcohol test of the Defendant–Appellant."

{¶ 30} "The trial court committed reversible error by overruling the Motion to Suppress the Pre–Miranda statements of the Defendant–Appellant."

{¶ 31} Given our resolution of Derov's first assignment of error, the remaining two assignments of error are rendered moot. Accordingly, the judgment of the trial court is reversed, Derov's conviction is vacated, and this case is remanded for further proceedings.

Judgment reversed,
conviction vacated,
and cause remanded.

DONOFRIO, J., concurs.

WAITE, J., concurs in judgment only with concurring opinion.

WAITE, Judge, concurring in judgment only.

{¶ 32} Although I agree that this conviction should be reversed, I cannot agree with most of the analysis in the majority opinion regarding the manner in which the field sobriety tests were conducted. The majority appears to be holding Trooper Martin to a strict-compliance standard on the field sobriety tests, even with regard to aspects of the tests that are not defined in the National Highway Traffic Safety Administration ("NHTSA") manual. The standard for conducting field sobriety tests is substantial compliance, and there is competent and credible evidence in the record that Trooper Martin substantially complied in conducting the tests. In reversing this case, I believe we do not need to discuss the particulars of the field sobriety tests. My basis for reversing the ruling on the

**52**

motion to suppress is that the officer did not have a sufficient reason to conduct field sobriety tests in the first place. Although an officer needs only a reasonable suspicion that a traffic violation has occurred to effect a traffic stop, that does not automatically justify further investigation into other crimes unless there are additional reasonable and articulable suspicions supporting further investigation. *State v. Evans* (1998), 127 Ohio App.3d 56, 62, 711 N.E.2d 761.

{¶ 33} Trooper Martin testified that he initiated the field sobriety tests based on a strong smell of alcohol coming from appellant. There was no erratic driving. The trooper did not observe anything about appellant's behavior when she exited her vehicle that might indicate intoxication. He did not even observe whether she had glassy and red eyes until he was already performing the horizontal gaze nystagmus ("HGN") test. Appellant did not confess to drinking any particular amount of alcohol, according to Trooper Martin's testimony. He believed she said she had one beer, but he was not even sure of that. My interpretation of the evidence presented at the suppression hearing is that Trooper Martin conducted the field sobriety tests on the sole basis that he smelled alcohol.

{¶ 34} The majority cites a case we have previously cited that places some limits on the facts that might satisfy the "reasonable and articulable" requirement in order to support an officer's decision to conduct field sobriety tests. In *State v. Dixon* (Dec. 1, 2000), 2nd Dist. No. 2000–CA–30, 2000 WL 1760664, the Second District Court of Appeals found no reasonable and articulable suspicion to conduct field sobriety tests based on an odor of alcohol, red glassy eyes at 2:20 a.m., and an admission from the defendant that he had consumed one or two beers. We cited Dixon in approval in a very recent case, *State v. Reed,* 7th Dist. No. 05 BE 31, 2006-Ohio-7075, 2006 WL 3849267. In *Reed,* we determined that there was no justification for conducting field sobriety tests based merely on a slight odor of alcohol, red glassy eyes at 1:05 a.m., and an admission from the defendant that he had consumed two beers. We have previously held that an odor of alcohol alone cannot justify conducting field sobriety tests. *State v. Downen* (Jan. 12, 2000), 7th Dist. No. 97–BA–53, 2000 WL 126616. I cannot see how we can be consistent with our recent *Reed* and *Downen* cases unless we rule that an officer does not have reasonable and articulable suspicion to conduct field sobriety tests merely on the basis of a strong odor of alcohol. Even if we include the red glassy eyes as a factor, which I am not inclined to do given the trooper's testimony, we have already concluded in *Reed* that facts limited to the smell of alcohol and red glassy eyes at a late hour do not permit an officer to conduct field sobriety tests.

{¶ 35} This is where our analysis should end. We do not need to issue new pronouncements of law regarding whether portable breath tests can be used at suppression hearings, or whether the HGN test must take at least 68 seconds

even though the NHTSA manual makes no mention of this, or that an officer does not substantially comply with the walk-and-turn test unless the officer repeats certain instructions even though the NHTSA manual does not so mandate. If we were required to reach and discuss these issues, and we are not, I would disagree with all three of these bright-line holdings made by the majority, particularly in imposing a minimum time requirement on the HGN test above and beyond the requirements of the NHTSA manual. In both cases cited by the majority in support of this conclusion, the time factor was clearly not the only reason given for disqualifying the HGN test. See *State v. Embry,* 12th Dist. No. CA2003–11–10, 2004-Ohio-6324, 2004 WL 2698417; *State v. Mai,* 2nd Dist. No. 2005–CA–115, 2006-Ohio-1430, 2006 WL 759706. Furthermore, in neither case can we determine the amount of time the officers actually took to perform the HGN tests. In *Mai,* the evidence showed that the officer took only two seconds to perform aspects of the test that should have taken approximately four seconds. In the instant case, Trooper Martin clearly testified that he took the full four seconds. I cannot agree with establishing a new rule of law regarding the HGN test when the officer's testimony establishes that he conformed to the NHTSA time requirements in performing the test.

{¶ 36} Finally, the majority's statement that "it is only illegal to drive while impaired" in Ohio is inaccurate. It is true that R.C. 4511.19(A)(1)(a) prohibits driving while under the influence of alcohol. On the other hand, R.C. 4511.19(A)(1)(b) through (h) prohibit driving while having certain concentrations of alcohol in one's blood, blood serum, blood plasma, breath, or urine. No impairment need be proven under R.C. 4511.19(A)(1)(b) through (h). There are a multitude of fact patterns by which a person could be successfully prosecuted for OMVI that involve no evidence at all that the person was "impaired."

{¶ 37} It is clear to me that Trooper Martin should not have conducted the field sobriety tests based primarily, if not exclusively, on a strong odor of alcohol. Therefore, while I cannot agree with the reasoning used by the majority, I agree with the result that the majority has reached. I concur in judgment only.