[Cite as *Cleveland v. Giering*, 2017-Ohio-8059.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105020**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## KIMBERLY M. GIERING

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2015 TRC 025863

**BEFORE:** E.A. Gallagher, P.J., McCormack, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 5, 2017

**ATTORNEYS FOR APPELLANT**

Hector G. Martinez
Leslie Johns
The Martinez Firm
4230 S.R. 306, Suite 240
Willoughby, Ohio 44094


**ATTORNEY FOR APPELLEE**

Anne E. Eisenhower
Chief Prosecuting Attorney
Cleveland Metroparks
4600 Valley Parkway
Fairview Park, Ohio 44126

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Kimberly M. Giering appeals her conviction for operating a vehicle under the influence of alcohol from the Cleveland Municipal Court. Giering also appeals the trial court's denial of her motion to suppress. For the following reasons, we affirm.

**Facts and Procedural Background**

{¶2} Giering was charged with OVI in violation of R.C. 4511.19(A)(1)(a), OVI with a prior conviction in violation of R.C. 4511.19(A)(2)(a) and a marked lanes violation. Giering filed a motion to suppress evidence arguing that the arresting officer lacked reasonable suspicion to initiate a traffic stop. The trial court denied the motion and the case proceeded to a jury trial where the following facts were adduced.

{¶3} Cleveland Metroparks Ranger Tim Garris was patrolling near Edgewater Park on June 20, 2015, when he observed Giering's vehicle hit the base of a temporary, portable stop sign on the right hand side of the roadway approaching the entrance ramp to Route 2. The stop sign was affixed to a metal pole constructed with an "X" base. Giering's vehicle struck the base of the sign causing it to wobble. Garris activated his dash camera and began following Giering as she merged onto Route 2. Garris's testimony and the dash camera video reflect that Giering merged onto Route 2 from the highway entrance ramp without using a turn signal. Giering overmerged with the left tires of her vehicle traveling directly over the lane lines for the middle lane for approximately seven seconds before she dramatically over-corrected and steered her

vehicle to the far right side of her lane. Shortly thereafter, Giering exited Route 2 and drove directly past a stop sign before stopping roughly 15 feet past the sign. Garris then executed a traffic stop.

{¶4} Garris testified that when he approached Giering's automobile, he found Giering slumped over the wheel and he encountered a strong odor of alcohol. He further testified that Giering had bloodshot eyes and he observed open alcohol containers inside the vehicle. Garris's dash camera video showed that Giering responded to Garris's questions with slurred speech and admitted to striking the stop sign "pretty hard." After Garris ordered Giering to step out of her vehicle, she became uncooperative and had to be physically removed. She also began denying that she had struck the stop sign despite admitting it minutes earlier. Garris testified that he placed Giering under arrest at this point because she was "highly intoxicated."

{¶5} Cleveland Metroparks Ranger Rudolph Radva responded to a back-up call from Garris during the traffic stop and found three bottles of Grey Goose vodka inside a bag on the front seat of the auto. Radva testified that one bottle was open and the other two contained vodka. A photograph of the bottles supported this account. Radva also found two six-packs of the alcoholic beverage Twisted Tea behind the driver's seat. A photo of the six packs revealed that several bottles of Twisted Tea were missing. Finally, Radva found a gift box containing two cases of miniature Grey Goose vodka bottles behind the passenger seat.

**{¶6}** Cleveland Metroparks Ranger Anthony Madlock also responded to the traffic stop and transported Giering to the Bratenahl police station to perform standardized field sobriety testing. Madlock testified that Giering had a strong odor of an alcoholic beverage coming from her breath, her speech was slurred and her emotions were up and down. Video of Giering in the backseat of Madlock's cruiser supported this description.

**{¶7}** At the Bratenahl police headquarters, Giering refused a BAC breath test and fell off the stool upon which she was sitting. Garris testified that Giering also had difficulty walking and standing. Video depicted Giering's condition deteriorating rapidly with incoherent speech as she was transported to the Cleveland city jail.

**{¶8}** Renee Summers testified that she spent over two hours with Giering at the Ivancic Marine sea store shortly before her arrest. She did not smell alcohol on Giering or detect any erratic behavior. She testified that Giering reported problems from a surgery and purchased two six packs of Twisted Tea before she drove off.

**{¶9}** Giering testified that she had undergone surgery five days before her arrest and had been prescribed Percocet for surgery-related pain. She stopped taking the Percocet three days prior to the subject incident but took one pill when she was leaving the marina. She admitted to drinking significant amounts of alcohol the prior night but denied drinking any alcohol on June 20, 2015. Giering denied feeling impaired while driving.

**{¶10}** The jury returned guilty verdicts on all three counts. The trial court merged Giering's R.C. 4511.19(A)(2) OVI with a prior conviction count into her R.C.

4511.19(A)(1)(a) OVI count and imposed a 180-day jail sentence on that count. The court further ordered that 90 days were to be suspended and, following an initial 10 consecutive days, Giering would be allowed to serve the remaining jail term over 40 consecutive weekends. The trial court also imposed a $1,625 fine on the OVI charge and a $75 fine on the marked lanes violation charge.

**Law and Analysis**

**I. Motion to Suppress**

{¶11} In her first assignment of error, Giering argues that the trial court erred in denying her motion to suppress evidence stemming from her traffic stop and arrest.

{¶12} Appellate review of the denial of a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Therefore, when considering a trial court's denial of a motion to suppress, our standard of review is "divided into two parts." *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). In a hearing on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *Id*. at ¶ 22, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998). Deference is, therefore, given to the trial court's findings of fact related to a motion to suppress if they are supported by competent, credible evidence. *Preztak* at ¶ 22. A reviewing court must, however, independently determine whether those facts satisfy the applicable legal standard. *Id.*

{¶13} Giering first argues that Ranger Garris lacked reasonable suspicion to support her traffic stop. A law enforcement official may conduct a traffic stop when there is a reasonable suspicion of criminal activity, such as a traffic violation. *State v. Robinson*, 8th Dist. Cuyahoga No. 95160, 2011-Ohio-842, ¶ 27. In this instance, the record as set forth above is replete with traffic violations that would justify a stop. We find no merit to Giering's first argument.

{¶14} Giering next argues that Ranger Garris lacked reasonable suspicion to ask Giering to exit her vehicle and submit to a field sobriety test. We find this argument to be moot because Ranger Garris proceeded directly to an arrest without performing a field sobriety test. However, the facts in this case would clearly have supported such a test.

{¶15} Finally, Giering argues that Ranger Garris lacked probable cause to arrest her for OVI. An officer may arrest a suspect without a warrant when he has probable cause to believe that the suspect was operating a motor vehicle under the influence of alcohol. *State v. Henderson*, 51 Ohio St.3d 54, 554 N.E.2d 104 (1990). In determining whether Ranger Garris had probable cause to arrest Giering for OVI, we must determine whether, at the moment of arrest, he had information sufficient to cause a prudent person to believe that Giering was driving under the influence. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). A probable-cause determination is based on the "totality" of facts and circumstances within a police officer's knowledge. *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997). While the odor of alcohol, glassy eyes, slurred speech, and other indicia of alcohol use by a driver are, in and of

themselves, insufficient to constitute probable cause to arrest, they are factors to be considered in determining the existence of probable cause. *State v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 57, citing *Kirtland Hills v. Deir*, 11th Dist. Lake No. 2004-L-005, 2005-Ohio-1563.

{¶16} Each OVI case is to be decided on its own particular and peculiar facts. *S. Euclid v. Bautista-Avila*, 8th Dist. Cuyahoga No. 102353, 2015-Ohio-3236, ¶ 18, citing *Mentor v. Giordano*, 9 Ohio St.2d 140, 146, 224 N.E.2d 343 (1967). The court is to examine all the facts and circumstances when deciding the issue of probable cause to support a warrantless arrest for drunk driving. *Id.*, citing *State v. Tate*, 40 Ohio App.3d 186, 187, 532 N.E.2d 167 (11th Dist.1987).

{¶17} Here, Garris provided detailed testimony regarding the intoxicated state of Giering at the time of their encounter including a strong odor of alcohol, bloodshot eyes, slurred speech and open containers of alcohol observed in her vehicle. The testimony concerning Giering's slurred speech was supported by the dash camera footage of the traffic stop.

{¶18} In addition to those factors, unlike the defendant in *Bautista*, the evidence in this case demonstrated erratic driving by Giering preceding the stop. Furthermore, Garris testified that Giering was physically slumped against the steering wheel during his interactions with her. Finally, Giering refused to comply with Garris's orders to exit her vehicle. On these facts, we find the record demonstrates probable cause to support her arrest for OVI.

**{¶19}** Giering's first assignment of error is overruled.

## II. Stipulation to Prior Conviction

**{¶20}** In her second assignment of error, Giering argues that the trial court erred in refusing to accept her offer to stipulate to the fact that she had a prior OVI offense.

**{¶21}** As part of its burden in establishing that Giering had committed an OVI with a prior conviction in violation of R.C. 4511.19(A)(2)(a), the state necessarily needed to establish the fact of a prior OVI conviction. Giering filed a motion in limine wherein she offered to stipulate to a 2013 OVI conviction so as to preclude the state from introducing evidence of the fact that she had four prior OVI offenses. The state responded and stated its intention to introduce evidence of only one prior OVI offense.

**{¶22}** In *State v. Creech*, Slip Opinion No. 2016-Ohio-8440, the Ohio Supreme Court held that:

> [W]hen the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment.

*Id.* at ¶ 40.

**{¶23}** We find any violation of *Creech* in this instance to be harmless error. At trial, when the issue was raised, the trial court accepted Giering's stipulation without objection by the state. The references in the record to Giering's prior OVI conviction were harmless and do not implicate the "name or nature" risk with which *Creech* was

concerned. The state referenced in its opening and closing argument that it needed to prove that Giering had a prior OVI conviction and that Giering did indeed have such a conviction. No references were made to the fact that Giering had three additional OVI convictions.

{¶24} Here, the fact that Giering had a prior OVI conviction was an element of the offense. This situation is easily distinguishable from *Creech* in that there was no prejudice to the defendant in the unveiling of the identity of the prior offense to the jury. There was never a mystery to protect as to what Giering's prior offense had been. Furthermore, there were no details of the "nature" of Giering's prior OVI admitted into evidence. Indeed, at side bar the state's fifth exhibit, a certified docketing entry from Giering's 2013 OVI offense in Stow Municipal Court, was referenced in conjunction with Giering's unopposed stipulation. The exhibit was admitted into evidence without objection with the state's other exhibits and never referenced again.

{¶25} We find no *Creech* error in this instance.

{¶26} Giering's second assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶27} In her third assignment of error, Giering argues that the state failed to present sufficient evidence to support her OVI conviction.

{¶28} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v.*

*Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

{¶29} Giering was convicted of OVI in violation of R.C. 4511.19(A)(1)(a) which provides:

> (1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
>
> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶30} This court has noted that field sobriety tests are not a necessary factor in an OVI conviction because, otherwise, "those with certain medical conditions would have a free pass to drive drunk or under the influence of a drug of abuse." *Solon v. Hrivnak*, 8th Dist. Cuyahoga No. 100411, 2014-Ohio-3135, ¶ 17, quoting *State v. Strebler*, 9th Dist. Summit No. 23003, 2006-Ohio-5711, ¶ 17. Instead, to prove impaired driving ability, the state can rely not only on coordination tests such as the field sobriety tests but also on

physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol. *Id.* at ¶ 18, citing *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 13.

{¶31} In this instance, Giering's erratic driving was evident from Ranger Garris's dash camera footage. In the short time Garris followed Giering, she committed multiple traffic violations. Giering's struggle to stay in her lane immediately after merging onto Route 2 was evident from the video footage. The testimony of Garris and Madlock established that she had been engaging in alcohol consumption. This testimony was further confirmed by the video footage of Giering following her arrest including her conduct in the backseat of Madlock's cruiser and at the Bratenahl police headquarters where she fell off of a stool.

{¶32} We find that the state offered sufficient evidence to support Giering's OVI conviction. We need not address appellant's guilty finding as to OVI with a prior offense in violation of R.C. 4511.19(A)(2) as that offense merged with the above analyzed OVI offense. *See State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18 (explaining that any sufficiency error as to merged counts would be harmless error); *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 (holding that when counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless).

{¶33} Giering's third assignment of error is overruled.

**IV. Manifest Weight**

**{¶34}** In her fourth assignment of error, Giering argues that her OVI conviction was against the manifest weight of the evidence.

**{¶35}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

**{¶36}** "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to

assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

{¶37} For the same reasons addressed in Giering's third assignment of error, we find no merit to Giering's manifest weight challenge. Much of the evidence in this case was captured on video or in photographs of the interior of Giering's vehicle and lent strong credence to the testimony of the arresting officers.

{¶38} Giering's fourth assignment of error is overruled.

{¶39} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., and
MARY J. BOYLE, J., CONCUR