[Cite as *State v. Wright*, 2022-Ohio-1815.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

       Plaintiff-Appellee,

- v -

LAMAR L. WRIGHT,

       Defendant-Appellant.

**CASE NOS. 2021-L-107**
          **2021-L-108**

Criminal Appeals from the
Willoughby Municipal Court

Trial Court Nos. 2021 CRB 00690
             2021 TRC 01351

**O P I N I O N**

Decided: May 31, 2022
Judgment: Affirmed and remanded

*Todd D. Cipollo*, Willoughby Hills Prosecutor, 6685 Beta Drive, Mayfield, OH 44143 (For Plaintiff-Appellee).

*John J. Dowell*, The Goldberg Law Firm, LLC, 323 Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} In this consolidated appeal, appellant, Lamar L. Wright ("Mr. Wright"), appeals his convictions for OVI and obstructing official business following a jury trial in the Willoughby Municipal Court.

{¶2} Mr. Wright presents three assignments of error, contending that (1) the state presented insufficient evidence to support his convictions; (2) his convictions are against the manifest weight of the evidence; and (3) the trial court abused its discretion in imposing his sentences.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) Mr. Wright's convictions for OVI and obstructing official business were supported by sufficient evidence. The arresting officer's testimony, if believed, was sufficient to establish beyond a reasonable doubt that Mr. Wright's driving ability was impaired and that Mr. Wright engaged in an affirmative act to obstruct the officer's OVI investigation.

{¶5} (2) Mr. Wright's convictions for OVI and obstructing official business are not against the manifest weight of the evidence. The state's case depended on the credibility of the arresting officer, whom the jury apparently found to be credible. Upon review, we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice.

{¶6} (3) The trial court did not abuse its discretion in sentencing Mr. Wright. Mr. Wright did not exercise his Fifth Amendment right to remain silent at sentencing, and the trial court considered Mr. Wright's statements for a proper purpose. Although not required, the trial court made several findings on the record that supported a more severe sentence than the minimum.

{¶7} (4) Although not raised by the parties, the trial court's judgment entries contain clerical errors regarding the degree of the obstructing official business offense and the sentence actually imposed.

{¶8} Thus, we affirm the judgments of the Willoughby Municipal Court and remand for the trial court to issue nunc pro tunc entries.

### Substantive and Procedural History

{¶9} On March 24, 2021, at approximately 12:50 a.m., Sergeant Henry Boepple ("Sgt. Boepple") of the Willoughby Hills Police Department was driving his police cruiser

2

Case Nos. 2021-L-107, 2021-L-108

eastward in the middle lane of I-90. While driving 70 mph in a 60-mph zone, Sgt. Boepple observed Mr. Wright's vehicle rapidly approach in the right lane, pass him, and exit the highway. Sgt. Boepple also observed tinting on Mr. Wright's front windows. Sgt. Boepple followed Mr. Wright's vehicle and observed him make several marked lane violations, including crossing the fog line and nearly striking the guardrail more than three times.

{¶10} Sgt. Boepple initiated a traffic stop by activating his overhead lights. Mr. Wright pulled his vehicle slightly to the right but continued to drive slowly for a short distance before coming to a complete stop.

{¶11} Sgt. Boepple approached Mr. Wright's vehicle from the passenger side. Mr. Wright looked at Sgt. Boepple and then looked out the driver's side window. After a brief period, Mr. Wright again looked at Sgt. Boepple, at which time the officer waved at him, but Mr. Wright looked back out the driver's side window. Sgt. Boepple knocked on the passenger's side window, but Mr. Wright rolled down the driver's side window. Eventually, Mr. Wright rolled down the passenger's side window.

{¶12} At that point, Sgt. Boepple detected a strong odor of an alcoholic beverage and burnt marijuana. Sgt. Boepple informed Mr. Wright of the reason for the traffic stop, and Mr. Wright cut him off and denied that he was speeding. When Sgt. Boepple asked for Mr. Wright's identification, Mr. Wright tried to hand it out the driver's side window. Mr. Wright eventually yelled, "here," and handed Sgt. Boepple his identification. Sgt. Boepple noticed that Mr. Wright's eyes were bloodshot and glassy and that he had an odor of an alcoholic beverage.

{¶13} Officer Jones arrived at the scene, and Sgt. Boepple asked Mr. Wright to exit his vehicle. Mr. Wright refused and asked why. Sgt. Boepple replied that he would

3

inform Mr. Wright once he exited the vehicle. A back-and-forth ensued, with Sgt. Boepple repeatedly asking Mr. Wright to exit the vehicle and Mr. Wright repeatedly refusing. After Sgt. Boepple twice warned Mr. Wright that he would be arrested for obstruction, Mr. Wright opened the passenger door but still refused to exit. Sgt. Boepple informed Mr. Wright that he was under arrest.

{¶14} At that point, Mr. Wright began using his cell phone. Sgt. Boepple removed the phone from Mr. Wright's hand and grabbed his wrist, at which time Mr. Wright pulled away. Sgt. Boepple drew his taser, put it against Mr. Wright's arm, and informed Mr. Wright that he would be tased, at which time Mr. Wright allowed the officers to handcuff him. The officers unfastened Mr. Wright's seatbelt, removed him from the vehicle, searched him for weapons, and placed him in the rear of Sgt. Boepple's cruiser.

{¶15} When placing Mr. Wright in the cruiser, Sgt. Boepple determined that the odor of alcoholic beverage was not only coming from Mr. Wright's vehicle but also from his person and his breath. According to Sgt. Boepple, he did not attempt to perform field sobriety tests due to Mr. Wright's lack of cooperation and compliance.

{¶16} The officers searched Mr. Wright's vehicle and discovered a plastic cup under the driver's seat containing a small amount of liquid that had an odor of an alcoholic beverage. The officers also discovered three unsealed medical marijuana containers prescribed in Mr. Wright's name. According to Sgt. Boepple, a small amount of marijuana appeared to be missing from each of the containers.

{¶17} Sgt. Boepple would later testify that the dash camera on his police cruiser was not working at the time of the incident and that his police department does not have body cameras.

4

{¶18} The officers transported Mr. Wright to the Lake County Jail. Sgt. Boepple placed a BMV form 2255 on Mr. Wright's lap, which explains the legal consequences of failing or refusing to submit to drug or alcohol testing. Mr. Wright shook the form off his legs and kicked it around with his feet. Mr. Wright would not answer when Sgt. Boepple asked him if he would provide a sample for testing. Sgt. Boepple construed Mr. Wright's silence as a refusal to submit to testing. Mr. Wright also made vague threats toward the officers. Because of Mr. Wright's lack of cooperation, the officers placed him in the jail without fingerprinting or photographing him.

{¶19} Mr. Wright was charged in two separate cases in the Willoughby Municipal Court. In case no. 2021 TRC 01351, Mr. Wright was charged with OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a); OVI refusal, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(2)(a) and (b); speeding, a minor misdemeanor, in violation of R.C. 4511.21; and restrictions on the use of tinted glass, a minor misdemeanor, in violation of R.C. 4513.241(C).

{¶20} In case no. 2021 CRB 00690, Mr. Wright was charged with obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31(A); possession of drug paraphernalia, a minor misdemeanor, in violation of R.C. 2925.141(C); possession of marijuana, a minor misdemeanor, in violation of R.C. 2925.11(A)(C)(3)(a); and open container in a motor vehicle, a minor misdemeanor, in violation of R.C. 4301.62(B)(4).

{¶21} Mr. Wright pleaded not guilty to the charges, and the cases proceeded to trial. Prior to the start of trial, the state moved to dismiss the OVI refusal charge, which

5

the trial court subsequently granted. The minor misdemeanor charges were tried to the bench, and the OVI and obstructing official business charges were tried to a jury.

{¶22} The state presented the testimony of Sgt. Boepple and rested. Mr. Wright moved for acquittal on all charges pursuant Crim.R. 29. The trial court granted Mr. Wright's motion with respect to the charges for possession of drug paraphernalia and possession of marijuana but denied his motion with respect to the other charges. Mr. Wright rested without testifying or presenting evidence.

{¶23} Following deliberations, the jury found Mr. Wright guilty of OVI and obstructing official business. The trial court found Mr. Wright guilty of speeding and the open container offense and not guilty of the tinted windows offense. The court determined Mr. Wright was on community control for felony offenses in the Lake County Court of Common Pleas and revoked his bond. The trial court ordered a presentence report ("PSR") and set the matter for sentencing.

{¶24} At the sentencing hearing, the trial court imposed a fine of $150 and costs for the open container offense and a fine of $100 and costs for speeding. For the OVI offense, the trial court imposed a fine of $575; costs; 180 days in jail with 120 days suspended (for a total of 60 days), with credit for 16 days; and a two-year license suspension beginning on the date of the offense. For the obstructing official business offense, the court imposed a fine of $100; costs; and 60 days in jail, with credit for 16 days, to be served concurrently with the jail sentence imposed on the OVI offense.

{¶25} The trial court subsequently filed judgment entries memorializing the verdicts and Mr. Wright's sentences. Mr. Wright filed two notices of appeal, which we

6

consolidated sua sponte. The trial court granted Mr. Wright's motion for release on bond pending appeal.

**{¶26}** Mr. Wright presents the following three assignments of error:

**{¶27}** "[1.] The City of Willoughby Hills failed to provide evidence sufficient to support Defendant-Appellant's conviction.

**{¶28}** "[2.] Defendant-Appellant's conviction is against the manifest weight of the evidence; therefore, Defendant-Appellant's conviction is in violation of the Ohio State Constitution and the Sixth and Fourteenth Amendments to the United States Constit[ut]ion.

**{¶29}** "[3.] The sentence imposed by the trial court was an abuse of discretion and considered impermissible factors."

### Sufficiency of the Evidence

**{¶30}** In his first assignment of error, Mr. Wright contends that the state failed to present sufficient evidence to support his convictions for OVI and obstructing official business.

**{¶31}** "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

**{¶32}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

Case Nos. 2021-L-107, 2021-L-108

defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at 259-260. A claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶ 14.

{¶33} Mr. Wright was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which provides, in relevant part, that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." To establish an OVI offense, "the state does not need to prove actual impaired driving but, rather, must only show impaired driving ability. Impaired driving ability can be proven through physiological factors such as slurred speech or bloodshot eyes and, also, through coordination tests such as the standard field sobriety tests." *State v. Shaffer*, 11th Dist. Portage No. 2002-P-0133, 2004-Ohio-336, ¶ 21.

{¶34} Mr. Wright first argues that this court's use of the word "and" rather than "or" in *Shaffer* means that the state is required to present evidence of physiological factors *and* coordination tests to establish impaired driving ability.

{¶35} Mr. Wright's reading of *Shaffer* is incorrect. This court in *Shaffer* provided examples of the different types of evidence that may establish impaired driving ability. This court has found sufficient evidence of impaired driving ability in situations in which the police did not perform field sobriety tests, including in *Shaffer* itself. *See id.* at ¶ 22;

8

*State v. Purdy*, 11th Dist. Lake No. 2015-L-054, 2016-Ohio-1302, ¶ 16. *See also Cleveland v. Giering*, 2017-Ohio-8059, 98 N.E.3d 1131, ¶ 30 (8th Dist.) ("[F]ield sobriety tests are not a necessary factor in an OVI conviction").

{¶36} Mr. Wright next argues that an odor of alcohol and glassy bloodshot eyes are insufficient to convict a defendant of OVI. He notes there was no testimony that he lacked balance or had slurred speech. In support, Mr. Wright cites *State v. Derov*, 176 Ohio App.3d 43, 2008-Ohio-1672, 889 N.E.2d 1057 (7th Dist.), where the Seventh District determined that the police did not have probable cause to arrest a suspect for OVI based on the time of the stop, the smell of alcohol, the suspect's red glassy eyes, and the suspect's admission to drinking one beer. *Id*. at ¶ 27. The *Derov* court noted that the suspect had not been driving erratically and there were no signs of physical impairment such as slurred speech or difficulty walking. *Id*.

{¶37} We find *Derov* to be distinguishable. Sgt. Boepple testified that Mr. Wright exhibited physiological factors that were not present in *Derov*, including erratic driving, disorientation, confusion, and uncooperative behavior. And unlike in *Derov*, where the defendant admitting to drinking "one beer," Sgt. Boepple testified that there was an open cup under Mr. Wright's seat containing liquid that had an odor of an alcoholic beverage. Accordingly, the state presented sufficient evidence, if believed, to establish beyond a reasonable doubt that Mr. Wright's driving ability was impaired.

{¶38} Mr. Wright was also convicted of obstructing official business in violation of R.C. 2921.31(A), which provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or

9

impedes a public official in the performance of the public official's lawful duties." This court has held that in order to violate the statute, a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's duties. *State v. Parkhurst*, 11th Dist. Trumbull No. 2015-T-0041, 2016-Ohio-1018, ¶ 28. A mere failure or refusal to respond to an officer's request does not constitute obstructing official business. *Id.*; *see State v. Brown*, 11th Dist. Lake No. 2006-L-064, 2006-Ohio-6872, ¶ 29 ("[A]n individual cannot be found guilty of obstructing official business by doing nothing * * *").

{¶39} Mr. Wright contends that his refusal to exit his vehicle did not constitute an affirmative act. However, Sgt. Boepple also testified that he grabbed Mr. Wright's wrist to remove him from the vehicle, and Mr. Wright pulled away. In *State v. Williams*, 9th Dist. Summit No. 23176, 2007-Ohio-622, the Ninth District found sufficient evidence to support the defendant's conviction for obstructing official business where several officers testified that the defendant "pulled away from officers as they reached inside the car to extract him from the vehicle." *Id.* at ¶ 28. Accordingly, the state presented sufficient evidence, if believed, to establish beyond a reasonable doubt that Mr. Wright engaged in an affirmative act.

{¶40} Mr. Wright's first assignment of error is without merit.

### Manifest Weight of the Evidence

{¶41} In his second assignment of error, Mr. Wright contends that his convictions for OVI and obstructing official business are against the manifest weight of the evidence.

{¶42} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

10

Case Nos. 2021-L-107, 2021-L-108

"In other words, a review court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶43} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶44} Mr. Wright first contends that his OVI conviction is against the manifest weight of the evidence because the state did not present evidence of coordination issues, speech issues, field sobriety tests, or chemical tests.

{¶45} As explained above, Sgt. Boepple testified regarding several factors that indicated Mr. Wright's driving ability was impaired. Sgt. Boepple also testified that he did not perform testing on Mr. Wright due to his failure to cooperate during the stop, which suggests that he did not have an opportunity to observe Mr. Wright's coordination. Therefore, the absence of the foregoing evidence does not weigh heavily against the jury's verdict.

11

{¶46} Mr. Wright next contends that the state did not present video to support Sgt. Boepple's testimony and that Sgt. Boepple was unable to recall any other information about the incident other than the details necessary to obtain a conviction. In essence, Mr. Wright challenges Sgt. Boepple's credibility.

{¶47} This court is not in a position to view the witnesses who testified below, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *State v. Thompson*, 2016-Ohio-7154, 71 N.E.3d 1219, ¶ 7 (11th Dist.). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *Id*. The trier of facts is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 19.

{¶48} On cross-examination, defense counsel ably pursued gaps in Sgt. Boepple's recollection. However, the jury was in the best position to view Sgt. Boepple and evaluate his credibility. The jury apparently found his testimony to be credible. Upon review, we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice.

{¶49} Mr. Wright next contends that his conviction for obstructing official business is against the manifest weight of the evidence because the statute requires an affirmative act and none was present in this case. This argument relates to the sufficiency of Sgt. Boepple's testimony rather than its weight. As explained above, the evidence supports a finding that Mr. Wright committed an affirmative act.

12

**{¶50}** Accordingly, Mr. Wright's convictions for OVI and obstructing official business are not against the manifest weight of the evidence.

**{¶51}** Mr. Wright's second assignment of error is without merit.

## Misdemeanor Sentencing

**{¶52}** In his third assignment of error, Mr. Wright challenges his sentences for OVI and obstructing official business.

**{¶53}** Misdemeanor sentencing is generally within the discretion of the trial court, and a sentence will not be disturbed absent an abuse of discretion. *State v. Corbissero*, 11th Dist. Ashtabula No. 2011-A-0028, 2012-Ohio-1449, ¶ 53. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶54}** When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

**{¶55}** Mr. Wright first contends that the trial court improperly considered his refusal to incriminate himself as a factor in determining his sentences.

**{¶56}** The Fifth Amendment to the United States Constitution prevents a person from being "compelled in any criminal case to be a witness against himself." The Supreme Court of the United States has held that in a criminal case, "no negative inference from the defendant's failure to testify is permitted." *Mitchell v. United States*,

13

526 U.S. 314, 327-328, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). This principle applies equally during the sentencing phase of a criminal case. *Id.* at 329. Therefore, a sentencing court may not draw adverse inferences from the defendant's silence in determining facts relating to the circumstances and details of the crime. *Id.* at 328.

{¶57} During the sentencing hearing, the trial court asked Mr. Wright if he had anything to say in his own behalf. Mr. Wright asked for leniency and stated, "I would say I apologize, but I can't apologize for something I didn't do." The trial court responded, "Okay. I reviewed the PSR. I understand your position on the OVI. But your conduct and engagement with law enforcement was most unpleasant; correct?" Mr. Wright and the trial court then engaged in a discussion regarding Mr. Wright's interactions with police that night, at which time Mr. Wright disputed portions of Sgt. Boepple's testimony.

{¶58} Since Mr. Wright voluntarily responded to the trial court's inquiries at the sentencing hearing, he did not exercise his constitutional right to remain silent. *See State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 90 (finding the defendant did not exercise his Fifth Amendment right where he voluntarily spoke at sentencing). Thus, the trial court necessarily could not have made negative inferences based on Mr. Wright's "silence" during sentencing.

{¶59} Further, the record demonstrates that the trial court considered Mr. Wright's statements for a proper purpose. R.C. 2929.22(C) provides that "[b]efore imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code." At the sentencing hearing, the trial court stated, "The Court finds the defendant is not amenable

14

to probation in these cases. There's no genuine remorse. Defendant takes no responsibility for what occurred that night and the interaction with the officer and the obstructing charge. I don't believe there would be any benefit to probation." Thus, the record demonstrates that the trial court was addressing one of the required statutory factors for misdemeanor sentencing.

{¶60} Mr. Wright next contends that the trial court abused its discretion by imposing more than the minimum sentence for his first OVI offense.

{¶61} A court that imposes a sentence for a misdemeanor has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing. R.C. 2929.22(A). In determining the appropriate sentence for a misdemeanor, the trial court must consider the factors set forth in R.C. 2929.22(B)(1)(a) through (g) and any other relevant factors. *See* R.C. 2929.22(B)(1) and (2).

{¶62} Although not required, the trial court made several findings on the record that supported a more severe sentence.

{¶63} Accordingly, the trial court did not abuse its discretion in imposing Mr. Wright's sentences for OVI and obstructing official business.

{¶64} Mr. Wright's third assignment of error is without merit.

### Nunc Pro Tunc Entries

{¶65} Although not raised by the parties, the trial court's judgment entries of September 3, 2021, and September 17, 2021, in both cases incorrectly identify obstructing official business as a misdemeanor of the first degree. *See* R.C. 2921.31(B) ("Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree"). The judgment entries of September 17, 2021, in

15

both cases also purport to impose a sentence for that offense of 180 days in jail, with 120 days suspended, while the sentencing hearing transcript indicates that the trial court imposed a sentence of 60 days in jail.

**{¶66}** Crim.R. 36 authorizes the trial court to correct "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission * * * at any time." Courts have held that a nunc pro nunc entry may be used to correct a sentencing entry to reflect the sentence the trial court imposed at the sentencing hearing. *See*, *e.g.*, *State v. Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320, ¶ 21; *State v. Fugate*, 12th Dist. Butler No. CA2000-02-031, 2000 WL 1708508, *2 (Nov. 13, 2000).

**{¶67}** Accordingly, the trial court is ordered to issue nunc pro tunc entries to state that obstructing official business is a misdemeanor of the second degree and that Mr. Wright was sentenced to 60 days in jail for that offense.

**{¶68}** For the foregoing reasons, the judgments of the Willoughby Municipal Court are affirmed, and this matter is remanded for the issuance of nunc pro tunc entries.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

Case Nos. 2021-L-107, 2021-L-108